# CHRISTIAN SCHUR v. FRED. SCHWARTZ.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued January 27, 1891—Decided February 16, 1891.

(*a*) The sale by a guardian of his wards' real estate, by order of the Orphans' Court, bond being approved, was duly confirmed. On the day the deed was made to the purchaser, the latter re-conveyed to the guardian, no purchase money passing between them. Afterward, on petition showing the facts, the sale was confirmed as though by leave of court the guardian had bought as a bidder at his own sale.

(*b*) Subsequently, upon a petition of the guardian averring that he still held the title to the real estate as guardian and omitting reference to the former proceedings, an alias order was made authorizing the sale of the real estate, and, the sale having been made, on bond filed, was duly confirmed. Afterwards, the title was again conveyed to the guardian in his own right, his possession remaining unchanged.

(*c*) While holding the title, thus acquired in his own right the second time, the real estate, by a sheriff's sale on a judgment sur mortgage made by the guardian when holding the title acquired at the first sale, was sold to the surety on the bond given on the second sale. By proceedings duly confirmed, an account was afterwards stated for the guardian, wherein he was charged with the proceeds of the first Orphans' Court sale:

1. In such case, the surety upon the first bond having paid to the wards judgments recovered in actions thereon after the confirmation of the account stated, had no right to be subrogated to the rights of the wards against the land, or to a decree for contribution against the purchaser

at sheriff's sale, as a surety on the second bond, in the absence of fraud
or collusion on the part of the latter affecting the rights of the wards.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-
COLLUM and MITCHELL, JJ.

No. 200 July Term 1890, Sup. Ct.; court below, No. 105
March Term 1886, C. P. No. 4.

On March 1, 1886, Christian Schur filed a bill in equity
against Frederick Schwartz, Frederick Kugel, Edward Kugel
and Barbara, his wife, John Muller, Charles Muller, Louis
Gemme and Barbara, his wife, Anna Fielmeyer and Emanuel
G. Reyenthaler. A demurrer having been overruled, defend-
ants were ordered to answer. On July 1, 1887, no answer
having been filed, decrees pro confesso were entered against
Frederick Schwartz, Frederick Kugel, Emanuel G. Reyenthaler,
Edward Kugel and Barbara Kugel. The decree pro confesso
was afterwards vacated as to Frederick Schwartz, who on March
7, 1889, filed an answer. Issue being joined, the cause was
referred to *Mr. Joseph DeF. Junkin,* as master and examiner,
who filed a report on March 1, 1890, finding in substance the
facts outlined as follows:

John Muller died in Philadelphia on October 6, 1866, intes-
tate, seised of certain real estate and leaving to survive him a
widow, Barbara, and five children, then minors, to wit, Louisa,
John, Charles, Barbara and Anna. In 1867, Barbara, the
widow, married Edward Kugel.

On July 9, 1870, Edward Kugel was appointed guardian of
said minor children. On July 11th, he presented his petition
for leave to sell the real estate then vested in his wards, and
on October 1st, after the report of an auditor, leave was granted
as prayed for. On November 1st, the guardian sold the real
estate to John Rombold, for $5,800, and on November 5th, a
return thereof was made, whereupon the sale was confirmed
and security ordered in $9,000. On November 14th, the bond
of the guardian, with Christian Schur as surety, in $9,000, was
filed and approved.

On January 5, 1871, the general bond of Edward Kugel, as
guardian, in $3,000, with Christian Schur (the plaintiff) as
surety, was filed and approved. On January 16th, Kugel, as

guardian, executed a deed for the real estate to John Rombold; on the same day, Rombold and his wife executed a deed for the same real estate to Edward Kugel in his own right. No purchase money whatever was paid by Rombold to Kugel, or by Kugel to Rombold, and on April 25th both deeds were recorded. On December 15th, of the same year, Kugel executed a mortgage of the real estate, for $4,000, to Frederick Schwartz, which was recorded on December 16th.

On September 19, 1872, Kugel made a second mortgage upon the same real estate to Henry Wolbold for $2,000, which was recorded the same day.

In April, 1873, Frederick Schwartz made an attempt to sell his mortgage, when the title was pronounced unmarketable. On May 10th, Kugel, at the suggestion of Schwartz, presented his petition to the Orphans' Court setting out the conveyances made on January 16, 1871, and, alleging the defect of title, prayed for a confirmation of the sale of November 1, 1870, as though he had obtained leave of court to bid at the sale, and on May 24th, a decree was made as prayed for.

Frederick Schwartz, as it appeared, was still unable to dispose of his mortgage, and on July 5, 1873, a second petition of Kugel was presented by other counsel, setting out the conveyances of January 16, 1871, the defective title thereunder, omitting any reference to the decree of May 24, 1873, and the petitioner, averring that he still held title as guardian, prayed for an alias order of sale. The order was made as prayed for, and on October 4th, the guardian made a return that he had sold the real estate to George Webber for $5,800, and the same day an order was made confirming the sale, security to be given in $11,600.

On March 13, 1874, Kugel, as guardian, with Frederick Schwartz, as surety, executed a bond for $11,600, conditioned for his faithful accounting for the proceeds of the sale ordered by the court on July 5, 1873; and, on March 16th, he executed a deed to George Webber, the purchaser at said sale. On the same day, Webber executed a mortgage on the real estate to Frederick Schwartz, for $4,000.

On April 3, 1874, Webber conveyed the real estate to Isaac Lobb; on May 26th, Isaac Lobb conveyed the same real estate to Kugel in his own right, and on May 27th, Kugel executed

Statement of Facts.

a mortgage thereon in favor of Frederick Schwartz et al., in the sum of $12,000, as collateral to secure the sureties. On June 9th Schwartz sold his $4,000 mortgage to Eli Krupp. On November 11th, Kugel's deed to Webber, Webber's deed to Lobb, and Lobb's deed to Kugel, were put on record, and on November 13th, Kugel's mortgage for $12,000 to Schwartz et al. was recorded.

On November 12, 1874, Henry Wolbold entered judgment against Kugel on the bond accompanying the mortgage for $2,000, dated September 19, 1872, and in July, 1877, at sheriff's sale on said judgment, the real estate was sold to Frederick Schwartz for $6,700, the sheriff's deed being delivered on July 14th, and recorded on October 5th. Soon thereafter, Schwartz leased the real estate to Kugel, who had all along been in possession, and on December 2, 1878, a mortgage on the real estate for $6,000 was executed by Schwartz in favor of Emanuel G. Reyenthaler.

In December, 1882, proceedings were taken by certain of the wards of Kugel to compel by citation the settlement of an account. The guardian filing no account, an auditor was appointed to state an account for him, and on February 10, 1883, the auditor reported, finding that the first sale of the real estate, made pursuant to the order of the Orphans' Court, November 1, 1870, and confirmed finally on May 24, 1873, vested the title in Kugel at that time; and stated an account charging the guardian with the price bid at that sale, to wit, $5,800, and interest, amounting to $12,242.36. This report was confirmed November 3, 1883.

In January, 1884, two suits were brought by certain of the wards against Christian Schur, one on the bond of November 14, 1870, for $9,000, and the other on the general bond of January 5, 1871, for $3,000; and on May 17, 1884, Schur presented his petition to the Orphans' Court, averring that there had never been a valid sale of the real estate of said minors, and praying that the account, stated by the auditor, should be reformed by striking out the charge against him of $12,242.36. On July 5, 1884, a demurrer to the petition was sustained by the Orphans' Court, ASHMAN, J., and, on appeal to the Supreme Court, on January 1, 1886, the decree sustaining the demurrer was affirmed: Schur's App., 17 W. N. 140 (1 Cent.

R. 888). The bill in this case was then filed, and by an amendment thereto made on September 3, 1886, it was averred that, judgments having been obtained in the suits by the plaintiff's wards, he had settled with them by the payment of $9,000.

Upon the facts, of which the foregoing is an outline, the master reported his conclusions of law in part as follows:

In arguing the case before the master, counsel for complainants condensed their case and the prayers of their bill into three propositions:

1. The plaintiff, as surety for Edward Kugel, guardian, is entitled to be subrogated to all the rights which the children of John Muller had at any time against said guardian.

2. Standing in the position of such children, the plaintiff can elect to treat the sale of the real estate as void, and is entitled to a decree for the repayment of the moneys which he has been compelled to pay as surety, out of the said real estate.

3. That the plaintiff is entitled to contribution from Frederick Kugel and Frederick Schwartz, sureties upon the bond in second Orphans' Court sale, in proportion to the respective bonds given by the two sets of sureties.

These three propositions cover all the prayers of the bill. They were combatted by counsel for defendant Schwartz, and your master will consider them in the order above given. . . .

1, 2. The first two positions of plaintiff, that he is entitled to be subrogated to the minors' rights and to a decree of repayment out of the real estate, both attack the present title to the property; and, to clearly understand this position, a short consideration of the acquirement of the same is now necessary.

It will be remembered that Schwartz finally succeeded in parting with his mortgage for a valuable consideration to one Krupp, and after he had so done, Wolbold, the trustee, holding the bond and mortgage for $2,000, given by Kugel under his first title, the good faith as to which said bond and mortgage have been in no way impugned, entered a judgment on his bond and sold the property at sheriff's sale. At that sale Schwartz, who then had no record interest of any kind, excepting as owner of certain liens to his use, and to whom Kugel was indebted for unpaid interest and money loaned, purchased the property, as the highest bidder, for the sum of $6,700, paid

that money to the sheriff, and from him received a deed conveying the property to him in fee-simple. Your master finds no fraud attending this transaction on the part of Schwartz. It may be or not that he purchased the property at a bargain. Thirteen years have passed and he appears to have sold it for $12,000, but its present value is no test of its value in 1877 ; and the master calls attention to the fact that in the distribution of the proceeds of that sale, the Wolbold judgment, under which the sale took place, had no share ; and yet, in the ordinary course of such transactions, the holder of the judgment probably bid up the property to its full value at a sale which discharged his claim. However, this does not seem an important matter. The vital question is what title did Schwartz acquire by that sale? It took place under a judgment accompanying a mortgage, given to a mortgagee who took the same as security for money loaned upon a title which had twice been solemnly confirmed by courts having jurisdiction thereof. The holder of such mortgage was a disinterested third party, without knowledge of the guardian's malfeasance in office, and in no way charged with his misconduct. Your master finds that such sale and conveyance thereunder vested in Frederick Schwartz a good and indefeasible title, and that he acquired the same as an innocent third party, purchasing at a fair public sale for its fair value, that which was being sold without fraud of any kind upon his part.

Looking now at complainant's position, in view of these considerations, the disposition of the same becomes a comparatively simple matter.

Complainant's first claim is that, as surety for the guardian, he is entitled to be subrogated to all the rights which the creditors of his principal, the children of John Muller, deceased, had at any time against such principal as their defaulting guardian. There can be no doubt of this as a general legal proposition ; that the plaintiff having been compelled to pay to the creditors of his principal that which the principal should have paid, is entitled to any rights which said creditors had against the principal, and the same needs no further discussion.

The second position, that, standing in the shoes of such creditor, the plaintiff can elect to treat the sale of the real estate as void, and is entitled to a decree for the repayment of moneys

Master's Report.

he paid as surety, out of the real estate, is a much more serious one.

Again glancing at the facts, we find that the children of John Muller elected to take the proceeds of the land rather than the land itself, and that they have been sustained in such election by the court of last resort. Their position is therefore settled. Now, if the guardian, whose debt this surety had been compelled to pay, was still in possession of this real estate, the right of the surety to proceed and recover from him the real estate or its value would be very clear; but, unfortunately for complainant, such is not the position of affairs. Unquestionably the original sale by Kugel to himself was voidable by any party in interest, but subsequently this title was confirmed by the court, and ratified by the election of the minors. That this confirmation and election would have no force in favor of the guardian as against this innocent surety, of course naturally follows, but the real estate out of which this relief is sought has been held by innocent third parties, for many years, who gave for it its fair adequate value.

As matter of law, your master finds that the confirmation by the court and the election of the minors to take the money instead of the property, rendered the title of the guardian good as against every one in the world, excepting the surety who had been compelled to pay that which the guardian should have paid for such property. It was no longer a voidable title, when the minors had made their election, and undoubtedly such action of theirs was carried back in legal effect to the date of the original sale. Schwartz in good faith loaned his money upon a title, which was good; Wolbold, as trustee, loaned his money upon a title which was good; and, when subsequently Schwartz purchased the property at sheriff sale under Wolbold's execution, he acquired a good and indefeasible title to the property as against the world.

Your master is clearly of opinion that the counsel for the minors pursued the only possible course open to them when they pursued the surety and not the land; for, unless Schwartz was guilty of a fraudulent combination with the guardian to deprive these minors of their property, at the time when these minors began their proceeding, the title by which he held the property was unassailable.

Master's Report.

Your master again states most emphatically, nowhere in the record is there any evidence of fraud on part of Schwartz as against these minors or their estate. With this element of fraud wanting, as charged in the bill, the whole of complainant's case falls. This bill charges that the real estate was purchased at sheriff's sale by Schwartz pursuant to a fraudulent arrangement between him and Kugel; that the pursuit of the surety by the minors, in preference to pursuit of the real estate, was the result of a fraudulent agreement among the parties defendant, and that the decree of May 24, 1873, was surreptitiously obtained for the purpose of relieving Frederick Schwartz and Frederick Kugel from liability as sureties. None of these allegations were sustained by evidence produced before your master; and the result is that, at the present time, he finds Frederick Schwartz, or his grantee, in possession of this property under a perfectly good title, without any fraud either on his part, or that of his grantee, by which the complainant or the Muller minors have been injured. This title has been acquired in good faith, for adequate consideration and under proceedings which were only made possible by the fact that complainant voluntarily became surety for the guardian who has since defaulted. If any wrong has been committed, it was through his instrumentality that the guardian was able to consummate it; and, upon the faith of what he has done, Kugel was able to, at least, give to the world a prima facie title, and by means of what he has done procured from Schwartz and Wolbold money subsequently loaned upon mortgage. At the most, it is the case of one of two innocent parties suffering for the wrong doing of a third person; and the well known rule that he who has put it in the power of such third person to commit the wrong, is the one who should suffer the consequences thereof, applies with full force to this case.

As before stated, if this property was still in possession of the guardian, the complainant's right to repayment out of the land would be very clear, and the doctrine of subrogation would apply with full force. It is stated in McCormick v. Irwin, 35 Pa. 117: "Subrogation is a mode which equity adopts to compel the ultimate discharge of a debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay. To effect this, the latter is allowed to take the

place of the creditor, and make use of all the creditor's securities as if they were his own." This clear statement of this doctrine, in view of the facts heretofore mentioned, effectually disposes of plaintiff's claim. Schwartz is not one who ought to pay this debt, and the property which he holds is not, and has not for a long time been one of the creditor's securities. The master, therefore, finds that complainant is not entitled to a decree for the repayment of the moneys which he has been compelled to pay as surety, out of the real estate which has been the cause of all this difficulty.

3. This leaves but one matter further to be considered, and that is the third proposition of the plaintiff, to wit, that he is entitled to contribution from Frederick Kugel and Frederick Schwartz, sureties upon the bond of the second Orphans' Court sale, in proportion to the two sets of bonds given by the sureties.

The previous findings of the master with reference to the second sale and all the proceedings had therewith, settle this question without need of further discussion. It has been found that the sole purpose of this proceeding was to make good the title to Schwartz's mortgage, and that all such proceedings and their results were utterly futile ; that no one was injured thereby, and the situation of affairs in no way thereby altered. It would consequently follow that the bond given was useless and void ; and, as the fraud perpetrated by the guardian was in no manner aided by this bond, but, on the contrary, prior to its entry, all damage that could be had been done to the property of these minors, your master fails to find any reason in law or equity why Frederick Schwartz should be compelled to contribute to a loss sustained by complainant, which was brought upon him by his own original act and subsequent carelessness as to its consequences.

Your master, therefore, finds the complainant is not entitled to contribution for his loss from Frederick Schwartz.

—The master having recommended that the plaintiff's bill be dismissed, the plaintiff filed various exceptions to his report. These exceptions were overruled by the master, and, after argument before the court in banc, a decree was entered on June 25, 1890, without opinion filed, dismissing the exceptions, confirming the master's report, and directing that the bill be

Arguments.

dismissed at plaintiff's costs. Thereupon the plaintiff took this appeal specifying that the court erred:

1. In not decreeing, as prayed for, that the plaintiff should be subrogated to all the rights of the wards of the defaulting guardian, in the real estate sold by him to John Rombold in November, 1870, as fully as said rights existed at the time the plaintiff became surety for said sale.

2. In not decreeing, as prayed for, that restitution should be made to the plaintiff, by the defendant Schwartz, out of the real estate described in the bill, at least to the extent of the profit which has accrued to the said Schwartz by reason of his having purchased the same at sheriff's sale in 1877.

3. In not decreeing, as prayed for, that contribution be made by Frederick Schwartz, as surety for the defaulting guardian, to the loss sustained by the plaintiff, as such surety, in the proportion which the bond of $11,600, given by the said Schwartz, bears to the bond of $9,000, given by the plaintiff.

4. In dismissing the plaintiff's bill and decreeing that he should pay the costs.

*Mr. Henry C. Howard* (with him *Mr. Louis H. Richards* and *Mr. Henry Pleasants, Jr.*), for the appellant.

Upon the right of subrogation, counsel cited: McCormick v. Irwin, 35 Pa. 111; Beeson v. Beeson, 9 Pa. 279; Skiles's App., 110 Pa. 248. Upon the right of contribution: Deering v. Earl of Winchelsea, 1 Lead. C. in Eq. 60; Commonwealth v. Cox, 36 Pa. 442; Jones v. Blanton, 6 Ired. Eq. 115 (51 Am. Dec. 415); Jones v. Hays, 3 Ired. Eq. 502 (44 Am. Dec. 78); Hutchcraft v. Shrout, 1 Mon. T. B. 206 (15 Am. Dec. 100).

*Mr. John Walker Shortlidge*, for the appellee.

Counsel cited: (1) Schur's App., 17 W. N. 140; Cock v. Thornton, 108 Pa. 640; Mead v. Conroe, 113 Pa. 224; Damon v. Bache, 55 Pa. 69. (2) Penna. R. Co.'s App., 86 Pa. 84; Xander v. Commonwealth, 102 Pa. 438; Bank of Ky. v. Schuylkill Bank, 1 Pars. 248; Littleton's App., 93 Pa. 181; Sawyers v. Hicks, 6 W. 78; McCormick v. Irwin, 35 Pa. 117; Small v. Commonwealth, 8 Pa. 105; Bensinger v. Wren, 100 Pa. 505; Cannell v. Crawford Co., 59 Pa. 201; Fink v. Mahaffy, 8 W. 384; Lloyd v. Galbraith, 32 Pa. 108; Wagner v.

Elliott, 95 Pa. 492; Wallace's Est., 59 Pa. 405; Hess's Est., 69 Pa. 276; Wright v. Sewing M. Co., 82 Pa. 82; Mosier's App., 56 Pa. 81; Kindt's App., 102 Pa. 443; McGinnis's App., 16 Pa. 448.

PER CURIAM:

After a careful examination of this case we find nothing to justify us in reversing the decree of the court below. The charge of conspiracy, contained in the twenty-fifth paragraph, is all that gives force to the bill, and this charge is not sustained by the master. On the contrary, he finds, and in this he is sustained by the evidence, that there is nothing to support the charge of fraud and conspiracy as to Schwartz, the only respondent who made defence, and the person against whom this bill is principally directed. It would consume much time, and serve no useful purpose, to discuss the case in detail. We think the bill was properly dismissed.

The decree is affirmed, and the appeal dismissed, at the costs of the appellant.